***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission AFFIRMS, with certain modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and *Page 2 
named employer.
3. The named Employer is self-insured, and Corvel is the Third Party Administrator.
4. The Employee sustained an injury to her lumbar spine on or about June 3, 2008, with the exact date to be determined by the Industrial Commission.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 37 years old. Plaintiff graduated from high school, enlisted in the United States Army/National Guard, and then later entered the Army Reserve.
2. On May 11, 2004, Plaintiff began working as a correction officer for Defendant. Plaintiff worked the day shift from 6:00 a.m. to 6:00 p.m., supervising inmates during their incarceration at Pamlico Correctional Institution. Plaintiff testified at the hearing before the Deputy Commissioner that she was originally assigned duties in operations, where she worked in the "kitchen, medical, patting down inmates, supervising them while they ate chow." Plaintiff was transferred to the Oriental Housing Unit in September 2007 and worked there until January 2009.
3. On June 3, 2008, Plaintiff was conducting an inmate count when she fell, injuring her back. Plaintiff testified that as she was counting on the second tier of the unit, she slipped and fell onto her handcuffs and pepper spray. Plaintiff stated that Officer Watkins helped her up, that she finished her count, and that within fifteen to twenty minutes Plaintiff informed Sergeant Selby that she needed to go to the doctor.
4. Plaintiff was treated at New Bern Family Practice Center on June 3, 2008. The medical records reflect that Plaintiff was diagnosed with back pain and was written out of work. *Page 3 
5. On June 10, 2008, Plaintiff returned to work. As she was putting on her equipment, Plaintiff testified that her back popped and she experienced pain. She notified her supervisor, Ms. McAllister, and returned to New Bern Family Practice for medical attention on June 11, 2008. The medical records reflect that Plaintiff "was doing well until this am" and was diagnosed with lower back pain and bilateral leg radicular symptoms. Plaintiff was taken out of work for three days.
6. The Forms 60 and 63 filed regarding the injury sustained on June 3, 2008, reflect that Plaintiff was being paid weekly compensation pursuant to "NCGS § 143-166.13 et seq salary continuation."
7. Plaintiff was treated by Dr. Marcus A. Hodges, a family practitioner, at New Bern Family Practice. Dr. Hodges testified at his deposition that Plaintiff had a normal MRI, that "pain is a subjective thing," and that Plaintiff's accident could have caused her condition and pain. However, Dr. Hodges could not explain Plaintiff's complaints of numbness and tingling. Dr. Hodges opined that nothing in her MRI indicated she should have continuing problems.
8. Plaintiff was next treated by Dr. Ira M. Hardy, III of Center for Scoliosis Spinal Surgery, PLLC. On July 21, 2008, Plaintiff was seen for lumbar back pain that radiates up and down, and numbness in her feet, hands, and left leg. The diagnosis on July 21, 2008 was lumbar sprain and Plaintiff was taken out of work until the studies ordered by Dr. Hardy were completed.
9. Dr. Hardy next treated Plaintiff on September 12, 2008. The medical record reflects that Plaintiff's bone scan was normal, and that her prior lumbar MRI scan was essentially normal. Dr. Hardy's medical record reflects that Plaintiff sustained a lumbar strain, that *Page 4 
operative treatment is not recommended, that Plaintiff will get better with time, and that she may resume her present occupation.
10. Plaintiff was released to return to work in a full duty status following the September 12, 2008 appointment with Dr. Hardy. Plaintiff returned to work for Defendants, "working the housing unit, conducting rounds, pulling yard duty, working the control booth, conducting count." Plaintiff testified that she continued to have pain, that her legs would go numb, and that she experienced swelling after her shifts. Plaintiff testified that as it relates to the June 3, 2008 injury, she did not undergo physical therapy and that her prescribed mediations were Flexeril and Hydrocodone.
11. On February 23, 2009, Plaintiff was required to gather for inventory the personal property of an inmate who requested protective custody. Plaintiff testified that she bagged the personal belongings, and as she pushed the first bag out the cell door, and reached back for the second bag, that she felt a sharp pain in her back. Plaintiff took the bags down three flights of steps and placed them in a buggy. Plaintiff estimated that the bags weighed sixty (60) to seventy (70) pounds.
12. Plaintiff testified that she was the acting-Sergeant for the day, that she went to the Sergeant's office and called Ms. Sharon McCallister, the personnel lady, to inform her of her injury. Plaintiff left work early due to the accident and presented to Express Care at Craven Regional Medical Center (now known as Carolinas East Medical Center).
13. The February 23, 2009 medical record for Craven Regional Medical Center reflects that Plaintiff had a back sprain in June of 2008, was out of work for three months, has been having continued pain, and denies any recent injuries. The medical records further reflect that Plaintiff "may return to work/school 3 days" and restrictions were "light duty." *Page 5 
14. Plaintiff returned to work in a light duty capacity and was assigned to work in segregation for her light duty assignment.
15. Defendants filed a Form 61 dated April 20, 2009, and did not accept Plaintiff's February 23, 2009 accident. Plaintiff testified that she utilized her health insurance policy to pay for the medical treatment for her back that was not covered or authorized by the Defendants.
16. Plaintiff was seen on March 9, 2009 by Dr. Alan D. Russakov, a specialist in physical medicine and rehabilitation, of Coastal Physical Medicine Rehabilitation Services. The medical record reflects the June 3, 2008 injury and that Plaintiff returned "to work in September of 2008 with ongoing symptoms which included numbness in her feet and legs, pain in her back." Patient reported an acute exacerbation of her low back pain, with numbness into her left leg on February 23, 2009. Dr. Russakov diagnosed Plaintiff with "mechanical low back pain — which began with an industry injury on June 3, 2008" and Plaintiff was to undergo physical therapy and continue on restricted light duty.
17. On March 30, 2009, Plaintiff again presented to Dr. Russakov and asked to be released from work restrictions. At the April 13, 2009 visit, Plaintiff reported to Dr. Russakov that she was back to her regular work, but reported increased back pain when she bends over. Dr. Russakov continued to treat Plaintiff through May of 2009.
18. Plaintiff next received medical treatment on October 21, 2009, from Dr. Angelo A. Tellis of Crystal Coast Pain Management Center, who is board-certified in physical medicine, rehabilitation and pain medicine, for pain management purposes. Dr. Tellis's medical records reflect that Plaintiff was seen for low back pain related to a work injury in June of 2008, and that she returned to work from September 2008 through February of 2009, when she reinjured her *Page 6 
back. Dr. Tellis diagnosed Plaintiff with low back pain and sacroiliac joint pain. On October 28, 2009, Plaintiff was given bilateral sacroiliac joint injections.
19. Dr. Tellis continued to treat Plaintiff from October of 2009 through the date of his deposition. The April 19, 2010 medical record reflects that the lumbar neural scan to differentiate between a sciatic issue and soft tissue pain showed a pathology involving the left L4 and L5 nerve roots, and that the previous SI joint injections had not provided any relief to Plaintiff.
20. Dr. Tellis testified at his deposition that the type of event or mechanism described for June of 2008 would cause the lower back problems for which Dr. Tellis provided medical treatment to Plaintiff. Dr. Tellis further testified that the February 2009 event likely did contribute to the continuing lower back problems. Finally, Dr. Tellis testified that the medical treatment he provided to Plaintiff was reasonably necessary to effect a cure, or give relief.
21. The Full Commission gives greater weight to the opinion of Dr. Tellis, a physical medicine and pain specialist, over Dr. Hodges, a family practitioner, regarding Plaintiff's June 3, 2008 back injury.
22. The Full Commission finds that Plaintiff sustained a compensable injury to her back as a result of a specific traumatic incident of the work assigned on June 3, 2008. Based upon the greater weight of the evidence of record, the Full Commission further finds that Plaintiff's compensable back injury was aggravated by the event on February 23, 2009.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 7 
1. Plaintiff sustained an admittedly compensable injury to her back as a result of a specific traumatic incident arising out of and in the course of her employment with Employer-Defendant on June 3, 2008. N.C. Gen. Stat. § 97-2(6). The compensable injury was materially aggravated on February 23, 2009. N.C. Gen. Stat. § 97-2(6).
2. Once the compensability of a claim is admitted or proven, plaintiff is not required at any point thereafter to prove the causal connection between the particular injury and the resultant treatment prescribed and the work accident, and there is a presumption that any additional medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
3. Defendants may overcome the Parsons presumption by proving that any additional treatment requested or presented by plaintiff, as part of the initial compensable injury is unrelated to the initial incident. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006). Defendants have failed to prove that Plaintiff's continuing back pain is not related to the compensable back injury June 3, 2008.Id.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the time limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 8 
1. Defendants shall pay for all reasonably necessary medical treatment related to Plaintiff's injury by accident, for so long as such treatment tends to effect a cure, provide relief or lessen her period of disability, subject to statutory limitations.
2 Defendants shall bear the costs.
This the ___ day of April 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1